**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **CRAIG STRAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:15 CV 149** |
| | ) | |
| **TOWN OF MERRILLVILLE, INDIANA, *et al.*,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION and ORDER**

This matter is before the court on the motion for summary judgment filed by the defendants, the Town of Merrillville, Indiana ("the Town"), and Merrillville police officer Curtis Minchuk. For the reasons stated below, defendants' motion (DE # 33) will be denied.

## I. BACKGROUND

The following facts are not in dispute for purposes of defendants' motion for summary judgment. On May 20, 2013, plaintiff Craig Strand parked his semi-truck tractor-trailer ("semi-truck") in the parking lot of the Planned Parenthood clinic in Merrillville, Indiana, where defendant Officer Minchuk was assigned to patrol. (DE # 1 at 2.) Plaintiff parked the vehicle and left to take a drug test at a nearby laboratory. (DE # 36 at 2.) Plaintiff asked a woman smoking outside the Planned Parenthood if he could park his semi-truck in the parking lot and she told him that he could. (*Id.*)

When Officer Minchuk subsequently reported for work at the Planned Parenthood, he saw the truck and attempted to locate the driver. (DE # 34 at 6.) After some investigation, he was unable to locate the driver and issued two traffic citations, which he placed on the semi-truck. (*Id.*) When plaintiff returned to the truck and saw the tickets, he asked to speak to Officer Minchuk. (*Id.*) Officer Minchuk drove his patrol car to where the semi-truck was parked and plaintiff explained why he had parked in the lot. (*Id.*) Plaintiff asked Officer Minchuk to void the tickets because there was not a sign indicating that he could not park in the lot, and in fact had been told he could park in the lot. (*Id.*) Plaintiff claims that Officer Minchuk solicited a bribe from him, but that he refused the solicited offer. (DE # 36 at 2.)

Officer Minichuk then drove his patrol car to the rear of the Planned Parenthood facility, where he was able to observe plaintiff at a distance. (DE # 34 at 7; DE # 36 at 2.) Instead of leaving the lot, plaintiff began taking photographs of the area, to establish the absence of any "No Parking" signs. (DE # 36 at 2.) Officer Minchuk observed plaintiff in the lot for three to five minutes and then returned to speak with plaintiff. (DE # 34 at 7.) He told plaintiff to leave, and plaintiff explained that he would, but wanted to first take photographs to show to the judge. (*Id.*) Officer Minchuk told plaintiff that he was calling a tow truck and that plaintiff had two minutes to leave the parking lot. (*Id.*) Plaintiff told Officer Minchuk that he would be gone before the tow truck arrived. (*Id.*)

Officer Minchuk then told plaintiff, "I told you to get the fuck out of here," stepped toward plaintiff, slapped the phone out of plaintiff's hand, and demanded

plaintiff's driver's license. (*Id.*) Plaintiff refused to provide his identification, stating, "No, I'm not gonna give you my fuckin' I.D. I don't have to give you shit. As a matter of fact, who are you? What's your badge number? What's your I.D.? What gives you the right to attack somebody who is acting in a peaceful manner; who's simply come to a place to try and do business?" (DE # 34 at 8.) Officer Minchuk responded, "I said, give me your I.D.," and grabbed plaintiff by the shirt and neck. (*Id.*) Plaintiff's shirt was ripped off and both men fell back a few steps. (*Id.*) Officer Minchuk again tried to grab plaintiff and attempted to push him onto the ground. (*Id.*) Plaintiff pushed him off, but Officer Minchuk continued to try to take plaintiff to the ground. (*Id.*) Plaintiff began to fall, grabbed Officer Minchuk's arm, and both men fell to the ground. (*Id.*) Officer Minchuk fell onto his back and plaintiff fell onto his side. (*Id.*) Plaintiff then reached over and grabbed Officer Minchuk by the neck and punched him in the face. (*Id.*) Plaintiff punched Officer Minchuk in the face at least three times while the officer was on his back, and while plaintiff's hand was on the officer's throat. (*Id.*) Officer Minchuk argues that he feared for his life, saw stars, and felt that he would pass out if plaintiff hit him again. (*Id.*) He worried that if he passed out plaintiff might be able to take his gun and kill him. (*Id.*)

Plaintiff then rose off the ground, stood four to six feet away from Officer Minchuk, put his hands in the air and stated, "I surrender. Do whatever you think you need to do. I surrender, I'm done." (*Id.* at 9.) Officer Minchuk, who was still on the

ground, unholstered his gun and fired one bullet which struck plaintiff in the abdomen. (*Id.*) Plaintiff survived and was later charged and convicted of felony battery. (*Id.*)

The parties dispute how much time elapsed between plaintiff's statement of surrender and Officer Minchuk's use of force. Plaintiff testified in his deposition that he had his hands in the air between ten seconds and one minute before he was shot. (*Id.*) However, defendants point to objective evidence that the entire physical altercation took place in less than thirty seconds. At some point at the start of the physical altercation Officer Minchuk called for assistance over his radio. (DE # 34 at 7.) The evidence demonstrates that he radioed again to report the shooting 21 seconds later. (*Id.* at 11.) Plaintiff does not challenge the accuracy of this evidence in his response brief, nor does he dispute the time line set forth by defendants.

Plaintiff's complaint alleges that defendants are liable pursuant to 42 U.S.C. § 1983 for Officer Minchuk's alleged use of excessive force. Plaintiff argues that Officer Minchuk is personally liable, and that the Town of Merrillville is liable pursuant to *Monell v. Dept. of Social Svcs.*, 436 U.S. 658 (1978). Defendants argue that Officer Minchuk is entitled to judgment in his favor as a matter of law because his decision to employ the use of deadly force was objectively reasonable. (DE # 34 at 4.) Defendants argue that the Town is likewise entitled to judgment in its favor because there is no evidence that it had any policy, custom, or practice that was the moving force behind Officer Minchuk's alleged excessive force. (*Id.*) Defendants argue, in the alternative, that

they are entitled to qualified immunity because defendants did not violate any of plaintiff's clearly established constitutional rights. (*Id.* at 12.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court

must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

## III. ANALYSIS

### *A. Fourth Amendment Legal Standard for Use of Deadly Force*

The touchstone of any Fourth Amendment analysis is reasonableness. *Cty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1546–47 (2017). "[R]easonableness is generally assessed by carefully weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* (*quoting Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

The question whether the use of force during an arrest is proper under the Fourth Amendment depends on the objective reasonableness of the officer's actions, judged on the basis of the conditions the officer faced. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Force is reasonable only when exercised in proportion to the threat posed, and as the threat changes, so too should the degree of force." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010) (internal citations omitted). In order to assess objective reasonableness, the court must consider all the circumstances, including "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*; *see also Johnson v. Scott*, 576 F.3d 658, 660 (7th

Cir. 2009). An officer may use deadly force only to seize a fleeing felon who has committed a violent crime or who presents an immediate danger to the officer or to others. *Garner*, 471 U.S. at 11.

*B. Defendants' Argument*

Defendants argue that this court should find as a matter of law that plaintiff was not subdued at the time Officer Minchuk employed deadly force. Defendants point to two precedential cases in which a court was able to determine, as a matter of law, that the plaintiff-suspect was not subdued at the time that the defendant-officer utilized force, and thus the use of force was reasonable. *See Johnson v. Scott*, 576 F.3d 658, 659 (7th Cir. 2009) and *City and Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765 (2015).

In *Johnson*, the plaintiff, a suspect in a shooting, fled police capture by car and then by foot. 576 F.3d at 659. As the defendant police officer and his canine companion cornered the plaintiff by a fence, the plaintiff made a last-minute surrender, put his hands in the air and stated, "I give up." *Id.* At the time, the defendant and his canine companion were only six to eight feet from the plaintiff. *Id.* The defendant's canine companion seized the plaintiff's arm, the officer took the plaintiff to the ground. *Id.* The plaintiff continued to struggle in order to escape the canine's grasp, the officer struck the plaintiff several times to subdue him, and the officer was able to place handcuffs on the plaintiff. *Id.* at 659-660. The plaintiff subsequently alleged that the officer's use of force was excessive because he had already surrendered prior to the use of force. *Id.*

The Seventh Circuit affirmed the district court's decision to grant summary judgment in favor of the officer on the basis that the officer's use of force was reasonable as a matter of law. *Id.* The Court found that the *Graham* factors both weighed heavily in favor of a finding of reasonableness. *Id.* The Court emphasized the severity of the plaintiff's suspected offense, plaintiff's reckless flight from the police, and the officer's reasonable belief that the plaintiff was armed. *Id.* The Court found that the officer was not required to take the plaintiff's surrender at face-value under the circumstances because the plaintiff surrendered at the very moment he realized he was cornered. *Id.*

The second case cited by defendants is *City and County of San Fransisco, Calif. v. Sheehan*, in which the Supreme Court considered the liability of defendant police officers who utilized deadly force to subdue a violent, knife-welding, mentally-ill woman. 135 S. Ct. at 1771. In *Sheehan*, local authorities had made several attempts to subdue the plaintiff in order to provide her with a mental health evaluation and treatment. *Id.* at 1770. Each time local authorities entered the plaintiff's room, she threatened them with a knife. *Id.* The defendant officers first used pepper spray in an attempt to subdue her. *Id.* at 1771. When she refused to drop the knife, one of the defendants shot her two times, but she did not collapse and did not drop the knife. *Id.* The second defendant officer then fired several more shots, and she finally fell. *Id.*

The question decided by the Supreme Court in *Sheehan* was whether the officers violated the plaintiff's Fourth Amendment rights when they decided to enter her room

to restrain her by force, *id.* at 1775, however, here the defendants cite this case for another proposition. Defendants point to a footnote in which the Court noted that the parties' dispute regarding whether Sheehan had fallen to the ground before the second officer fired was not material. The Court stated that even if Sheehan had been on the ground before the second round of shots were fired, "'she was certainly not subdued.'" *Id.* (internal citation omitted). Defendants argue that this finding supports their position that Officer Minchuk acted reasonably in shooting plaintiff because plaintiff, like Sheehan, was not subdued at the time he was shot. (DE # 34 at 18.)

*C. Defendants' Reliance on* Johnson *and* Sheehan *is Misplaced*

Defendants urge that, in light of *Johnson* and *Sheehan*, this court must find in their favor. This is an overreaching application of the law. Pursuant to *Johnson*, a court *may* find as a matter of law that an officer acted reasonably in employing force, in spite of a suspect's verbal statement of surrender. *Johnson* identifies circumstances that are sufficient, but not necessary, to grant an officer summary judgment. Other cases, however, identify circumstances in which an officer's use of force after a suspect's surrender created a material question of fact to be determined by a jury. *See e.g. Alicea v. Thomas*, 815 F.3d 283 (7th Cir. 2016) (genuine issues of material fact remained regarding reasonableness of officers' use of force, and degree of force used, after suspect "had ceased flight, was effectively trapped, and [] immediately complied with police orders.").

*Johnson* and *Sheehan* are distinguishable from the present case based on the very factors that determine the reasonableness of an officer's use of force. *See Graham*, 490 U.S. at 396. First, in this case, the underlying crime at issue was a parking violation. This is significantly less serious than the crime in *Johnson*, where the plaintiff was the suspect in a shooting.

Second, unlike in *Johnson* or *Sheehan*, there was no reason for Officer Minchuk to believe that plaintiff was armed with a deadly weapon. Thus, a jury could reasonably conclude that once plaintiff stepped away from Officer Minchuk and placed his hands in the air he was no longer an imminent threat to Officer Minchuk.

Third, a jury could find that the degree of force that Officer Minchuk employed was not proportional to the threat plaintiff posed. While Johnson was suspected of involvement in a shooting and was believed to be in possession of a firearm, the force employed against him was a dog bite. In this case, however, plaintiff had committed a parking violation and there was no reason for Officer Minchuk to suspect plaintiff was armed; yet, Officer Minchuk utilized deadly force.

Fourth, this case is distinguishable from *Johnson* and *Sheehan* because a jury could reasonably find that plaintiff had been subdued prior to Officer Minchuk's use of force. Here, plaintiff voluntarily extracted himself from the altercation with Officer Minchuk, stood and walked four to six feet away, placed his hands in the air, and stated, "I surrender. Do whatever you think you need to do. I surrender, I'm done." (DE # 34 at 9.) In *Johnson* and *Sheehan*, however, the inference that the suspect had not

surrendered or been subdued was much stronger. Johnson had made a prolonged attempt to evade arrest and only surrendered at the moment he was cornered and could run no more. Thus, a police officer could reasonably conclude that Johnson's surrender was disingenuous. Likewise, even if Sheehan had fallen to the ground after the first two shots, she continued to brandish her knife at an officer who was cornered a few feet away, and thus she obviously had not been subdued.

The final reason that this case is distinguishable from *Johnson* and *Sheehan* concerns Officer Minchuk's own actions immediately prior to shooting plaintiff. Unlike the cases cited by defendants, in this case Officer Minchuk was the initial aggressor. The Seventh Circuit has held that "the sequence of events leading up to the seizure is relevant because the reasonableness of the seizure is evaluated in light of the totality of the circumstances." *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 483 (7th Cir. 2015). An officer's conduct, and any dangerous circumstances created by that officer, provide context in determining whether the use of deadly force was objectively reasonable. *Id.* "When an officer's unreasonable (and unconstitutional) conduct proximately causes the disputed use of force, that conduct is part of the 'totality of the circumstances' that should be considered to determine if the use of force was reasonable . . . ."*Doornbos v. City of Chicago*, 868 F.3d 572, 583 (7th Cir. 2017).

The Court's reasoning in *Doornbos* is instructive. In *Doornbos*, a plainclothes police officer allegedly failed to identify himself as a police officer during a stop-and-frisk, escalating the encounter into a physical confrontation and arrest. *Id.* at 577. In

holding that the jury should have been instructed on police frisks, the Court stressed that an officer's actions that needlessly escalate a confrontation are relevant in determining the reasonableness of those actions under the Fourth Amendment. The Court considered, for example, whether the police tactic would provoke panic, hostility, needless risk, or a fight-or-flight response - emphasizing that self-defense is a basic right. *Id.* at 586. The Court ultimately held that because the officer's conduct "proximately caused the violent confrontation[,] [t]his information was relevant for the jury in assessing whether [the officer's] use of force was reasonable 'under the totality of the circumstances.'" *Id.* at 583 (internal citation omitted). "[P]olice officers 'who unreasonably create a physically threatening situation in the midst of a Fourth Amendment seizure cannot be immunized for the use of deadly force.'" *Id.* at 584 (*quoting Catlin v. City of Wheaton*, 574 F.3d 361, n. 7 (7th Cir. 2009)).

Applying this reasoning to plaintiff's case, a jury could find that Officer Minchuk's use of deadly force was not reasonable because he needlessly provoked the physical altercation with plaintiff that later served as the basis of his use of force. There was no indication that plaintiff might pose a danger to Officer Minchuk until after the officer had slapped plaintiff's cell phone out of his hands and grabbed him by the neck and shirt forcefully enough to rip plaintiff's shirt off. (DE # 34 at 7-8.) In fact, but for Officer Minchuk's alleged aggressions, the encounter likely would have been limited to a routine parking citation.

Defendants urge the court to find Officer Minchuk's use of force reasonable based on his necessity for split-second decision-making. While this court is certainly mindful that it must evaluate the reasonableness of Officer Minchuk's use of force based on the perspective of a reasonable officer on the scene, and not with the 20/20 vision of hindsight, *Alicea*, 815 F.3d at 288, this alone is not sufficient to find in defendants' favor. "To be sure, an officer will not be held liable if the circumstances under which the force was used evolved so rapidly that a reasonable officer would not have had time to recalibrate the reasonable quantum of force." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 733 (7th Cir. 2013). However, "[w]hen an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity." *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993). *See Miller v. Gonzalez*, 761 F.3d 822, 829–30 (7th Cir. 2014) (question of fact existed regarding whether suspect had been subdued at the time officer employed force where suspect had only been motionless for ten seconds before officer broke suspect's jaw to effectuate arrest). Here, it is unclear whether the rapidly-evolving nature of the altercation justified Officer Minchuk's use or force, or whether he had time to recalibrate the degree of force necessary, in light of plaintiff's statement of surrender. In light of these questions of fact, summary judgment will be denied.

*B. Defendants' qualified immunity defense*

Defendants argue, in the alternative, that they are entitled to qualified immunity. (DE # 34 at 25.) Defendants contend that (i) Officer Minchuk did not violate plaintiff's

Fourth Amendment rights when he employed deadly force, or else (ii) the contours of plaintiff's rights were not so clearly established that no reasonable officer in Officer Minchuk's position could have believed that deadly force was justified. (*Id.*)

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (*quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "To be clearly established the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right.'" *Becker v. Elfreich*, 821 F.3d 920, 928–30 (7th Cir. 2016) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[A] case directly on point is not required for a right to be clearly established and 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Id.* (internal citation omitted). In undertaking this analysis, the court takes care to "look at the right violated in a 'particularized' sense, rather than 'at a high level of generality.'" *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011) (internal citation omitted).

It is, of course, "clearly established that a police officer may not use excessive force in arresting an individual." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2001). Moreover, it is well established that an officer may not continue to use force after an individual has been subdued and has ceased resisting. *See e.g.* Johnson v. Scott, 576 F.3d 658, 660 (7th Cir. 2009) ("It is well established that a police officer may not

continue to use force against a suspect who is subdued and complying with the officer's orders.").

Here, however, there remains a question of fact as to whether plaintiff was subdued prior to Officer Minchuk's use of deadly force. Thus, the court must reserve the question of defendants' qualified immunity until this factual question has been resolved. *See Weinmann v. McClone*, 787 F.3d 444, F.3d 448–451 (7th Cir. 2015) ("The existence of a factual dispute about the circumstances surrounding [the defendant's] decision to fire on [plaintiff] precludes a ruling on qualified immunity at this point."); *Abbott*, 705 F.3d at 729–34 (fact dispute precluded ruling on qualified immunity at summary judgment stage).

## IV. CONCLUSION

For these reasons, the court **DENIES** defendants' motion for summary judgment (DE # 33); **GRANTS** defendants' motion for leave to file excess pages in support of their motion for summary judgment (DE # 30); and **GRANTS** defendants' motion to seal Exhibits E, G, I, K to their motion for summary judgment (DE # 32). The court **ORDERS** the parties to file a joint status report regarding their willingness to engage in a settlement conference before a Magistrate Judge by **March 2, 2018**. A trial date will be set under a separate order.

**SO ORDERED.**

Date: February 7, 2018

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT